| | |
|---|---|
| SEDRIC WILLIAMS,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 3:18-CR-00113-TMB-MMS-1<br><br>ORDER ON FINAL REPORT AND RECOMMENDATION DENYING PETITIONER'S AMENDED MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE UNDER 18 U.S.C. § 2255 [DKT. 316] |

## I.   INTRODUCTION

The matter comes before the Court on the Final Report and Recommendation ("Final R&R") of the Magistrate Judge.[1]  On September 26, 2025, Petitioner Sedric Williams filed his Amended Motion to Vacate, Set Aside, or Correct a Sentence Under 18 U.S.C. § 2255 (the "Motion").[2]  The United States filed a Response in Opposition,[3] and Williams filed a Reply.[4]  On February 20, 2026, the Magistrate Court entered its Final R&R, recommending the Court deny Williams's Motion.[5]  Williams filed Objections to the Final R&R.[6]  The Court has conducted a *de novo* review, and for the reasons discussed below, **ACCEPTS and ADOPTS WITH MODIFICATION** the Final R&R at Docket 316.  Accordingly,

---

[1] Dkt. 316 (Final Report and Recommendation).
[2] Dkt. 309 (Petitioner's Amended Motion to Vacate, Set Aside, or Correct a Sentence Under 18 U.S.C. § 2255).
[3] Dkt. 311 (Government's Response in Opposition to Petitioner's Motion to Vacate His Conviction Pursuant to 28 U.S.C. § 2255).
[4] Dkt. 312 (Petitioner's Reply to Government's Response).
[5] *See generally* Dkt. 316.
[6] Dkt. 317 (Petitioner's Objections to Report and Recommendation).

1

the Motion at Docket 309 is **DENIED** and the Objections at Docket 317 are **OVERRULED**.

## II.     PROCEDURAL BACKGROUND

### A.  Jury Trial, Appeal, and Habeas Petition

The Court assumes the parties' familiarity with the underlying facts.  On May 22, 2019, Williams was charged by Superseding Indictment with one count of Possession of a Controlled Substance with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)[7] for events occurring on September 14, 2018.[8]  Following a jury trial,[9] on December 22, 2021, Williams was found guilty on Count 1.[10]  The jury additionally found by Special Verdict that "the amount of a mixture and substance containing a detectable amount of heroin possessed by [Williams] with intent to distribute equaled or exceeded 100 grams[.]"[11]  On September 1, 2022, this Court sentenced Williams to 120 months' imprisonment, followed by 8 years of supervised release.[12]  Williams appealed his conviction to the Ninth Circuit Court of Appeals on the basis that a Government witness's testimony was inadmissible, and, on May 28, 2024, the appellate court affirmed his

---

[7] Dkt. 65 (Superseding Indictment).

[8] *Id.*; *see also* Dkt. 278 (Transcript of Trial by Jury – Trial Day 1) at 144.

[9] Dkt. 212 (Minute Entry for Trial by Jury Day 1); Dkt. 213 (Minute Entry for Trial by Jury Day 2); Dkt. 221 (Minute Entry for Trial by Jury Day 3); Dkt. 223 (Minute Entry for Trial by Jury Day 4); Dkt. 224 (Minute Entry for Trial by Jury Day 5).

[10] Dkt. 225 (Jury Verdict Form).

[11] Dkt. 226 (Special Verdict Form).

[12] *See* Dkt. 258 (Minute Entry for Imposition of Sentence); Dkt. 262 (Judgment).

conviction.[13]  On September 26, 2025, Williams filed the § 2255 Motion at issue, arguing that he had ineffective assistance of counsel at multiple procedural stages.[14]

### B. Motion, Response, and Reply

Williams argued in his Motion that he had ineffective assistance of counsel at multiple procedural stages.[15]  Williams presented three claims: 1) that all of Williams's counsel were ineffective "in failing to secure expert review of evidence" and that "trial counsel was ineffective in failing to file a motion to suppress or dismiss based on race-based selective enforcement[;]" 2) that Williams's trial counsel in particular was ineffective "in failing to file pretrial motions to suppress unconstitutional searches of three cell phones" and the reports thereof; and 3) that Williams's trial and appellate counsel were ineffective in "failing to object and appeal the submission of a supplemental instruction to the jury solely in writing, rather than requiring the Court to read it[.]"[16]

The Government responded in Opposition, arguing that the Court should deny the Motion for three reasons.  First, the Government argued that any renewed motion to suppress on racial profiling grounds would have been fruitless and that Williams has not demonstrated under an ineffective assistance of counsel analysis that his counsel was deficient in failing to employ an expert to review the audio and video recordings.[17]  Second,

---

[13] *United States v. Williams*, No. 22-30155, 2024 WL 2717400, at *1–*2 (9th Cir. May 28, 2024); *see also* Dkt. 292 (United States Court of Appeals for the Ninth Circuit Memorandum).
[14] Dkt. 309 at 2–3.
[15] Dkt. 309 at 2–3.
[16] *Id.* at 3.
[17] Dkt. 311 at 16–23.

the Government contended that the motions to suppress the searches of Williams's cell phones would have been futile.[18]  Lastly, the Government asserted that the Court's choice not to read the answer to the jury question aloud was harmless error and was not a presumptively prejudicial structural error.[19]

On November 10, 2025, Williams filed a Reply to the Government's Response, arguing that failure to answer a jury question orally is a structural error,[20] contending that there is sufficient factual ambiguity in the record to warrant an evidentiary hearing,[21] requesting record expansion,[22] and presenting caselaw to contradict the Government's position that the warrant applications for Williams's phones were not stale.[23]

*C. Objections to the Final R&R*

The Magistrate Judge issued the Final Report and Recommendation without holding an evidentiary hearing, as it determined that, even had the Court found the ambiguities in Williams's favor, he would not have been entitled to habeas relief.[24]

Williams reiterates each of his initial arguments in his Objections to the Final Recommendation.[25]  He objects to the recommendations that no certificate of appealability issue,[26] that failure to secure an expert did not constitute ineffective assistance of counsel,[27]

---

[18] *Id.* at 23–30.
[19] *Id.* at 30–35.
[20] Dkt. 312 at 2–8.
[21] *Id.* at 1–2, 9.
[22] *Id.* at 13.
[23] *Id.* at 13–15.
[24] Dkt. 316 at 3.
[25] Dkt. 317 at 3–9; *see generally* Dkt. 314 (Objections to Initial R&R).
[26] Dkt. 317 at 1–2.
[27] *Id.* at 3–4.

that the search warrants application did not overcome the possibility of staleness,[28] and that the failure to read one jury instruction was harmless error.[29] Further, Williams "requests the Court reject the findings and allow him to conduct discovery are [sic] allow for expansion of the record[.]"[30] The Court addresses each issue *de novo*.

### III. LEGAL STANDARD

*A. De novo review*

Under 28 U.S.C. § 636(b)(1)(C), a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." A court is to "make a *de novo* determination of those portions of the magistrate judge's report or specified proposed findings or recommendations to which objection is made."[31] But as to those topics on which no objections are filed, "[n]either the Constitution nor [28 U.S.C. § 636(b)(1)] requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct."[32]

*B. Motion Pursuant to 28 U.S.C. § 2255*

Under 28 U.S.C. § 2255, a district court may "vacate, set aside, or correct" a sentence of a federal prisoner that was imposed in violation of the Constitution or a law of the United States. On a motion for relief under 28 U.S.C. § 2255, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief,

---

[28] *Id.* at 4.
[29] *Id.* at 4–9.
[30] *Id.* at 3.
[31] 28 U.S.C. § 636(b)(1)(C).
[32] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."[33]  If the Court determines that relief is warranted, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[34]

Summary dismissal of a §2255 claim is appropriate when the allegations are vague or conclusory, palpably incredible, or patently frivolous or false.[35]  Moreover, "[a] claim must be so palpably incredible or patently frivolous as to warrant summary dismissal in order to justify the refusal of an evidentiary hearing[.]"[36]  Thus, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."[37]  "Section 2255 requires only that the district court give a claim careful consideration and plenary processing, including full opportunity for presentation of the relevant facts."[38]

### C.  Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is rooted in the Sixth Amendment right to counsel.[39]  A defendant asserting a claim of ineffective assistance of counsel must satisfy

---

[33] 28 U.S.C. § 2255(b).
[34] *Id.*
[35] *See Blackledge v. Allison*, 431 U.S. 63, 75–76 (1977).
[36] *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004) (internal quotations and citations omitted).
[37] *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).
[38] *Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989) (internal quotations omitted).
[39] *See Lafler v. Cooper*, 566 U.S. 156, 162 (2012)*; see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

the two-pronged test defined in *Strickland v. Washington*.[40]  Under that test, a defendant must show that (1) counsel's performance was deficient, *i.e.*, "fell below 'an objective standard of reasonableness;'"[41] and (2) that the deficiency was prejudicial to the defense, *i.e.*, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[42]

In addressing the first element, the performance prong, judicial scrutiny of an attorney's performance, especially in hindsight, is highly deferential.[43]  Attorney conduct should be evaluated from the attorney's perspective at the time of the representation.[44] Generally, an attorney's performance is strongly presumed to fall within the wide range of reasonably professional competent assistance.[45] "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.  Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."[46]

The second prong, prejudice, "focuses on the question whether counsel's deficient performance renders the result of . . . the proceeding fundamentally unfair."[47] A reasonable probability that the results of the proceeding would have been different is "a probability

---

[40]  466 U.S. 668 (1984).
[41]  *Silva v. Woodford,* 279 F.3d 825, 836 (9th Cir. 2002) (quoting *Strickland,* 466 U.S. at 688).
[42]  *Strickland*, 466 U.S. at 694; *see also United States v. Signori*, 844 F.2d 635, 638 (9th Cir.1988).
[43]  *Strickland*, 466 U.S. at 689.
[44]  *Id.*
[45]  *Id.*
[46]  *Id.* at 692.
[47]  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

sufficient to undermine confidence in the outcome."[48] A defendant must make a greater showing than simply asserting an error that could theoretically have some effect on the outcome of the proceeding; but, a showing by a preponderance of the evidence is not required by *Strickland*.[49]

Thus, a defendant must prove both deficient performance and consequent prejudice to succeed in establishing ineffective assistance.[50] The court need not inquire whether an attorney's performance was deficient if such alleged deficiency could not have resulted in prejudice under *Strickland*.

## IV. DISCUSSION

*A. Any Motion to Suppress on the Issues of Racial Profiling and the Dash Camera Footage Would Not Have Succeeded on the Merits.*

Williams argues that he repeatedly "disputed and sought to challenge"[51] Alaska State Trooper Jason Somerville's[52] dash camera footage (introduced at trial as Exhibit 51),[53] which captured much of the incident on September 14, 2018.[54] Williams filed an initial Motion to Suppress as early as January 31, 2019,[55] several months after the filing of the original Indictment,[56] arguing Trooper Sommerville initiated a race-based stop on

---

[48] *Strickland*, 466 U.S. at 694.

[49] *Duncan v. Ornoski*, 528 F.3d 1222, 1246 (9th Cir. 2008).

[50] *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995) ("[P]etitioner bears the burden of establishing both.").

[51] Dkt. 309 at 4.

[52] *Id.* at 3.

[53] Dkt. 282 (Transcript of Trial by Jury – Trial Day 4) at 53.

[54] Dkt. 278 at 144.

[55] *See generally* Dkt. 31 (Defendant's Motion to Suppress Evidence and Request for Evidentiary Hearing).

[56] Dkt. 2 (Indictment) (filed September 20, 2018).

Williams.[57]   He contends that, "[o]ther than the evidence from the cell phones, the audio/visual exhibits from the night of [] Williams'[s] arrest on September 14, 2018, was the strongest evidence the Government had."[58]

Williams now argues his counsel's failure to secure an expert witness in a reasonable time to prepare for trial, lack of technical knowledge and skill "in an age of increased . . . digital discovery[,]" and inability to seek assistance to identify an expert until the day before trial are "contrary to the prevailing professional norms for criminal defense practice[.]"[59]  Williams argues these failings satisfy the second prong of the *Strickland* analysis[60] (that the deficiency was prejudicial, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").[61]

The Government argues that Williams "fails to offer any evidence as to what an expert would have said, let alone that such testimony would have been exculpatory."[62]  The Government cites Ninth Circuit case law providing that, "[a]bsent an account of what beneficial evidence investigation into any of these issues would have turned up, [a defendant] cannot meet the prejudice prong of the *Strickland* test."[63]  Moreover, as to the motion to suppress based on Trooper Sommerville's alleged racial motivation, the

---

[57] Dkt. 31 at 1.
[58] Dkt. 309 at 4.
[59] Dkt. 309 at 23–24.
[60] *Id.* at 24.
[61] *Strickland*, 466 U.S. at 694.
[62] Dkt. 311 at 17.
[63] *Id.* (citing *Hendricks v. Calderon*, 70 F.3d 1032, 1042 (9th Cir. 1995)).

9

Government argues that Williams must show that a motion to suppress "would have been meritorious"[64] and that failure to file the meritorious motion "fell below an objective standard of reasonableness."[65] The Government contends that Williams has not shown that "no competent attorney would think a motion to suppress would have failed"[66] because Trooper Sommerville's following of Williams did not constitute a seizure.[67] The Government contends that Williams's decision to flee from Trooper Sommerville at a high rate of speed was an independent intervening act sufficient to purge the taint of any illegal conduct in the initial stop"[68] and argues that evidence at trial "disproved any claim of racial discrimination" on Trooper Somerville's part.[69] Trooper Sommerville testified that it was too dark for him to see the driver of the vehicle.[70]

Regarding the failure to secure an expert, the Magistrate Judge noted that mere speculation of what an expert might have presented is insufficient to prevail on a § 2255 motion.[71] However, out of concern for the Petitioner's ability to substantively pursue that claim, the Magistrate Judge instead recommended this Court deny the Motion on the basis

---

[64] Dkt. 311 at 18 (quoting *Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1170 (9th Cir. 2003)).

[65] *Id.* at 19 (quoting *Moore v. Czerniak*, 574 F.3d 1092, 1101 (9th Cir. 2009) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986)), *overruled on other grounds by Premo v. Moore*, 562 U.S. 115 (2011)).

[66] *Id.* (quoting *Premo*, 562 U.S. at 124).

[67] *Id.* at 20.

[68] *Id.* at 21.

[69] *Id.* at 22.

[70] *Id.* (citing Dkt. 278 at 158–59).

[71] Dkt. 316 at 11 (citing *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is not enough to establish prejudice."); *Hendricks*, 70 F.3d at 1042 ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, [a habeas petitioner] cannot meet the prejudice prong of the *Strickland* test.").

that "a renewed motion to suppress on [] racial profiling [grounds] would have been futile."[72]

The Magistrate Judge noted that there is no evidence to suggest Trooper Sommerville activated his lights or sirens or maneuvered his vehicle to control Williams's movement without reasonable suspicion; "[i]t was only after [] Williams began driving away erratically and exceeding the posted speed limit by at least 34 miles per hour that [Trooper Sommerville] turned [on] his sirens[.]"[73] The Magistrate Judge concluded that, "[e]ven assuming that Trooper Somerville was initially following [] Williams by virtue of his race, he witnessed [] Williams commit a serious and potentially life-threatening crime[,]" an intervening act which allowed Trooper Sommerville to arrest Williams.[74]

In Williams's Objections, he requests the Court reject the Magistrate Judge's findings and allow him to conduct discovery on this issue.[75] He contends that the Magistrate Court conceded that Williams's trial counsel's performance satisfies the first prong of the *Strickland* analysis.[76] Williams argues that, "[a]ssuming the attenuation severs any race-based claim Williams sought to pursue, the evidence would still have been helpful beyond simply a pre-trial *Fourth Amendment* analysis, e.g., impeaching Trooper Somerville's testimony at trial."[77]

---

[72] *See* Dkt. 316 at 11–12.
[73] *Id.* at 13–14.
[74] *Id.* at 15.
[75] Dkt. 317 at 3–4.
[76] *Id.* at 4.
[77] *Id.* at 3 (emphasis in original).

1. <u>Williams Has Not Demonstrated that an Expert Would Have Testified Favorably on His Behalf.</u>

The Court, having reviewed *de novo* and considered the filings and applicable law, concludes that Williams has not made the requisite showing that an expert would have testified favorably on his behalf and would have affected the outcome of Williams's trial.[78] Notably, the transcript of the first day of trial does not demonstrate that the expert identified by Williams's trial counsel would have testified favorably in his behalf; Williams's trial counsel proffered to the Court that the expert had not yet even made a determination as to whether pursuing the forensic validity of the video "would be potentially worth our time to actually tear into[,]"[79] indicated that, after a brief review of the HTML document associated with the video, the expert suggested it "doesn't show that anybody did anything wrong[,]"[80] and, after a review of the video, that "there [was] no video break[.]"[81] The expert was unable to conduct a waveform analysis of the video's audio, however, which might have yielded additional results.[82] This lack of even a suggestion of tampering does not indicate that Williams cannot make the required showing; however, it does demonstrate that he has not yet done so.

2. <u>Any Unconstitutional Police Conduct was Interrupted by Williams's Speeding.</u>

Concerning the racial profiling sub-claim, the Court concludes that Williams was

---

[78] *See Grisby*, 130 F.3d at 373.
[79] Dkt. 278 at 4–5.
[80] *Id.* at 12.
[81] *Id.* at 129.
[82] *Id.*

not yet detained when he began to speed "at 69 in the 35-mile-an-hour speed limit zone."[83] Even assuming Trooper Sommerville held a racial motivation for following Williams, the connection between that alleged unconstitutional police conduct and the vehicle stop was interrupted such that "the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained."[84] A motion to suppress therefore would not have succeeded on the merits, and on this sub-claim Williams therefore cannot meet either prong of the *Strickland* test. [85]

As outlined above, the Court concludes that the record precludes habeas relief, and the Court therefore declines to hold an evidentiary hearing.[86]

B. *The Application for Search Warrants Was Not Stale.*

Williams's assertion that the application for search warrants was stale is premised upon the intervening time between Williams's arrest on September 14, 2018, and the forensic examination of the three cell phones in Williams's vehicle, conducted in early December 2019.[87] The search warrants were not applied for nor obtained until November 26, 2019, yet Williams notes that the affidavits for the search warrants do not provide any new facts after his date of arrest.[88] Williams argues cells phones are vulnerable to remote

---

[83] *Id.* at 162.
[84] *See Utah v. Strieff*, 579 U.S. 232, 238 (2016).
[85] *Silva* , 279 F.3d at 836 (quoting *Strickland,* 466 U.S. at 688) ("To obtain habeas relief, a petitioner must satisfy two prongs: deficient performance and prejudice . . . [A] petitioner must carry the burden of demonstrating that his counsel's performance was so deficient that it fell below an 'objective standard of reasonableness.'").
[86] *See Landrigan*, 550 U.S. at 474.
[87] Dkt. 309 at 25.
[88] *Id.* at 25–26.

wiping or data encryption and, as he contends nothing in the warrants application suggests the phones were made secure from such tampering, his counsel should have filed a motion to suppress.[89] Additionally, law enforcement initially logged the phones under the wrong case number,[90] which Williams contends further warranted a motion to suppress.[91]

The Government notes the evidence in this case indicates that the chain of custody for the phones was intact (as the phones were bagged, logged, and remained sealed until they were transferred to the Drug Enforcement Agency).[92] The Government further argues that staleness generally does not apply to electronic devices because of the longevity of digital media files.[93] Moreover, the Government contends that, even if the warrants were deficient, the good faith doctrine would apply because law enforcement's reliance on the warrants was objectively reasonable.[94]

The Magistrate Judge concluded that a delay of over a year to apply for search warrants had not rendered the applications stale, and thus counsel was not ineffective for failing to move to suppress the fruits of the searches of the three cell phones.[95] Staleness, the Magistrate Judge noted, is not only based on length of time but also on the facts of the

---

[89] *Id.* at 27–28.
[90] *Id.* (citing Dkt. 287 (Transcript of Final Pretrial Conference) at 27).
[91] *Id.* at 28.
[92] Dkt. 311 at 25 (citing Dkt. 279 (Transcript of Trial by Jury – Trial Day 2) at 154, 159).
[93] *Id.* at 26 (citing *United States v. Kvashuk*, 29 F.4th 1077, 1087 (9th Cir. 2022) (citing *United States v. Schesso*, 730 F.3d 1040, 1047 (9th Cir. 2013) (holding that "a mere 20 months" was not
too long to expect data to remain recoverable))).
[94] *Id.* at 28 (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)).
[95] Dkt. 316 at 16.

14

case and the nature of the property for which law enforcement seeks a warrant.[96] Even assuming the warrants were invalid, the Magistrate Court recommended that the good faith exception would apply because there was nothing misleading about the search warrants, the approving judge did not appear to have abandoned her neutral role, and there was no indication of facial deficiency or lack of probable cause in the application.[97]

This Court concludes that, under the first prong of the *Strickland* analysis, Williams's counsel's performance here did not fall below "an objective standard of reasonableness[.]"[98] The Ninth Circuit has held that evidence of a crime can remain on electronic devices in particular for months or years after seizure and that forensic analysts often can still recover information that a defendant has attempted to delete.[99] Upon review of the applicable case law, the Court further concludes that the good faith exception would have applied even had the warrant applications been stale. [100]

In Williams's Objections to the Final R&R, he notes that the Magistrate Judge did not address the "break" in the chain of custody, which he contends should have been contained in the application for the search warrants.[101] However, Williams does not dispute that the phones were bagged, logged, and sealed .[102] Therefore, the Court concludes that Williams has not shown that counsel's performance was deficient[103] in not

---

[96] *Id.* (citing *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997)).
[97] *Id.* at 19.
[98] *Strickland,* 466 U.S. at 688.
[99] *Kvashuk*, 29 F.4th at 1087.
[100] *See Leon*, 468 U.S. at 922.
[101] Dkt. 317 at 4.
[102] *See* Dkt. 279 at 154, 159.
[103] *Silva,* 279 F.3d at 836 (quoting *Strickland,* 466 U.S. at 688).

15

filing a motion to suppress, let alone that such a deficiency was prejudicial.[104]

C. *The Court Sending Back a Written Answer to a Jury Note Rather than Reading Such Answer Aloud Did Not Constitute Error, Harmless or Otherwise.*

Finally, Williams argues that this Court should have read aloud rather than provided in writing an answer to a jury question.[105] The Government did not dispute this was error but argued such error was harmless.[106]

The Magistrate Judge concluded that this Court read the jury instructions to the jury as was required, and answering a subsequent jury question in writing rather than aloud constituted harmless rather than a structural error.[107] The Magistrate Judge noted that, unlike *Guam v. Marquez*, in which a district judge failed to read *any* jury instructions to the jury, this Court's reading aloud an answer to a jury question was more comparable to *United States v. Becerra*, in which the Ninth Circuit wrote, "Omission of a single element of the charged offense from the jury instructions is error, but not structural error[.]"[108]

Here, the Court departs from the Magistrate Judge's conclusion. For the reasons set out below, the District Court's decision to send back a written response was not error, harmless or otherwise.

---

[104]  *Strickland*, 466 U.S. at 694*; see also Signori*, 844 F.2d at 638.
[105] Dkt. 309 at 29–32.
[106] Dkt. 311 at 30–35.
[107] *Id.* at 22.
[108]  *Guam v. Marquez*, 963 F.2d 1311, 1313, 1315–16 (9th Cir. 1992); *United States v. Becerra*, 939 F.3d 995, 1003 (9th Cir. 2019).

1.  <u>The Court Did Not Fail to Instruct the Jury.</u>

To warrant federal habeas relief for an error in a jury instruction, the petitioner must demonstrate that the "instruction by itself so infected the entire trial that the resulting conviction violates due process."[109] A trial court is generally obligated to clear up any confusion the jury may have, but a trial judge, as "governor of the trial," enjoys wide discretion in how to charge the jury and tailor those instructions.[110] "This 'wide discretion' carries over to a trial judge's response to a question from the jury."[111]

Williams, quoting *United States v. Becerra*, argues in his Motion that "[n]o *en banc* or Supreme Court case has held that the failure to instruct the jury is *not* structural error."[112] However, failure to instruct the jury *at all*, failure to instruct the jury *orally*, and failure to *respond orally* to a jury question are each distinct from one another. In the words of the Ninth Circuit, "[w]ritten instructions in response to juror notes may be treated as jury instructions for purposes of review."[113] The operative word is "may." Moreover, as the Ninth Circuit later noted, "[*People of Territory of Guam v.*] *Marquez* makes clear [that] the district court in this case erred by not reading *the essential jury instructions* aloud."[114] In *Marquez,* the district court failed to read *any* of the essential jury instructions aloud, instead "pass[ing] out written instructions setting forth the elements of the crimes . . . in 'outline

---

[109] *Waddington v. Sarausad,* 555 U.S. 179, 191 (2009).
[110] *Arizona v. Johnson,* 351 F.3d 988, 994 (9th Cir. 2003), *cert. denied,* 543 U.S. 836 (2004).
[111] *Id.*
[112] Dkt. 309 at 31 (citing *United States v. Becerra*, 939 F.3d 995, 1002–3 (9th Cir. 2019) (emphasis in original)).
[113] *See Beardslee v. Woodford*, 358 F.3d 560, 590 (9th Cir. 2004).
[114] *Becerra*, 939 F.3d at 1002 (emphasis added).

17

form.'"[115] *Marquez* stands for the proposition that jury instructions *on the elements of the offense* are required to be read orally. [116] The Ninth Circuit later held that "when a trial court abdicates its responsibility to charge the jury orally as to the elements of the charged crimes, it commits structural error."[117]

Here, however, the Court did, in fact, orally instruct the jury on the elements of the offense at issue in the jury note.[118] The response to the jury question asking to clarify the Special Verdict form only rephrased and reiterated information which had already been orally announced during trial.

The question asked by the jury was, "Clarify [sic] Does 100 grams on Special Verdict 1 mean that the defendant had to intend to distribute the total 100 grams or more? or just in posession [sic] ?" The language of the answer provided to the jury was as follows: "In regard to Special Verdict Form 1, you must unanimously find that the defendant intended to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin."[119] Instruction No. 15 of the Jury Instructions, by comparison, stated:

> If you find the defendant guilty of the charge in Count 1 of the indictment, you are then to determine whether the government proved beyond a reasonable doubt that the amount of the mixture or substance containing a detectable amount of heroin equaled or exceeded 100 grams. Your determination of weight must not include the weight of any packaging material. Your decision as to weight must be unanimous.
>
> The government does not have to prove that the defendant knew that the quantity of a mixture and substance containing a detectable amount of heroin

---

[115] *People of Territory of Guam v. Marquez*, 963 F.2d 1311 (9th Cir. 1992).
[116] *Marquez*, 963 F.2d at 1314.
[117] *Becerra*, 939 F.3d at 998.
[118] Dkt. 230 (Jury Instructions) at 16.
[119] Dkt. 224-1 (Jury Note) at 2.

was more than 100 grams.[120]

Jury Instruction No. 15 was verbatim announced orally on December 21, 2021, the fourth day of the jury trial.[121] The written answer to the Jury Note differed in phraseology, not in content. It therefore cannot be said that "that [the] instruction[s] defining the offense charged" was not read aloud, which was the issue at hand in *Marquez*,[122] nor that the Court "abdicate[d] its responsibility to charge the jury orally as to the elements of the charged crimes."[123]

As the Ninth Circuit has explained, there are two main functions performed by orally reading the instructions to a jury.[124] The first is to assist jurors in adequately comprehending the instructions. But, as the appellate court noted,

> [t]he oral charge also performs a second, signaling function that cannot be replaced by a printout or a pamphlet. Jury instructions are not the judicial equivalent of a car manual or a cookbook. When an enrobed judge orally charges the jury, the jurors are impressed with the fact that they have been entrusted with the power to decide the defendant's fate. This oral, public ritual helps ensure that "jurors . . . recognize the enormity of their task and . . . take [that task] seriously."[125]

The Court notes that both of these functions had already been performed when the instructions proper were read to the jury.

---

[120] Dkt. 230 at 16.
[121] Dkt. 282 at 45.
[122] *Marquez*, 963 F.2d at 1314 (9th Cir. 1992) (under the heading titled, "*Is It Error to Fail to Give Oral Instructions on the Elements of a Crime?*" (emphasis in original)).
[123] *Becerra*, 939 F.3d at 998.
[124] *Id.* at 1001.
[125] *Id.*

2.  <u>Written Responses to Jury Questions Are Permissible.</u>

Numerous circuits have upheld written responses to jury questions.[126]  The determining factor in those cases has not been whether the response is written but not read aloud; it has turned instead, for instance, on whether the parties were given a reasonable opportunity to debate what kind of response was most appropriate,[127] on whether the written response misinterpreted the law or the instructions,[128] or on whether the written response prejudiced the defendant.[129]

Beyond the blanket statement that structural error is presumptively prejudicial, none

---

[126] *See United States v. Zamichieli*, No. 18-3053, 2022 WL 17484324, at *5–6 (3d Cir. Dec. 7, 2022) ("Zamichieli also contends that the District Court erred by submitting a written rather than an oral response to the jury question . . . We have not squarely decided whether an answer to a jury question must be delivered orally rather than in writing, although courts across the nation allow a written response, and several of our sister circuits have endorsed a trial court's discretion to respond to jury questions in writing.") (citing *Beardslee*, 358 F.3d at 590–91; *United States v. Maraj*, 947 F.2d 520, 525 (1st Cir. 1991); and *United States v. Dellinger*, 472 F.2d 340, 379 (7th Cir. 1972)).

[127] *See, e.g., Maraj*, 947 F.2d at 525 ("If, however, the note is to be answered in writing, the court's reply should be marked as an exhibit for identification, the judge should read both the jury's note and the reply into the record, and counsel should be afforded an opportunity to register objections before the reply is transmitted to the jury.").

[128] *See, e.g., Beardslee*, 358 F.3d at 575 (holding in the petitioner's trial for first degree murder, a state trial court's written response to the jury's question that "there is and can be no explanation of the instructions" was harmless; such failure did not warrant federal habeas relief because the petitioner offered nothing to suggest the jury misinterpreted the law or the instructions).

[129] *See, e.g., United States v. Acosta*, 763 F.2d 671, 677 (5th Cir. 1985) ("Whether or not to use a written charge and whether or not to reply to a jury's request for additional instructions are both matters properly determined by the sound discretion of the trial judge. Thus, there is no error in the district court's refusal to submit a written charge, unless in the totality of the circumstances of the case the written response to the jury's inquiries created an unbalanced charge prejudicial to the defendants." (omitting internal citations) (citing *Stephens v. United States*, 347 F.2d 722, 725 (5th Cir.), cert. denied, 382 U.S. 932 (1965))).

20

of the above circumstances are alleged by Williams to be now before the Court.[130]  In fact, the parties at trial debated the language of the written response before it was sent back to the jury,[131] and Williams himself does not allege the response to the jury note misinterpreted the law.[132]  The Government, interestingly, does argue the response was erroneous:

> The [G]overnment was not required to prove any mens rea as to the type or amount of the drug involved in the offense.  *The response that the Court gave the jury was thus more favorable to the defendant than the law required*, holding the government to a burden of proof as to Williams's intent to distribute a particular quantity of drugs that the government did not actually have to meet.[133]

From this, Williams argues in his Reply that, "had the Court read the instruction, the Government would have realized the instruction was perhaps legally incorrect and objected."[134]  But Williams does not himself appear to contend that the instruction was incorrect, and the fact that the Court's response was re-read multiple times to both parties as the language was being debated undercuts Williams's argument that the Government was not given an opportunity to object.

> 3. <u>Court's Written Response Differs in Kind from the Scenarios Contemplated in *Becerra* and *Marquez*.</u>

The Court's written response to the jury note was not an instruction on the elements of the offense.  Even if it had been, the requirement under *Marquez* and *Becerra* to orally

---

[130] Dkt. 312 at 3.

[131] Dkt. 282 at 103.

[132] *See generally* Dkt. 317; Dkt. 312; Dkt. 309.

[133] Dkt. 311 at 30 (citing *United States v. Collazo*, 984 F.3d 1308, 1329 (9th Cir. 2021) (en banc)) (emphasis added).

[134] Dkt. 315 at 6.

read the elements of the offense aloud were already satisfied on December 21, 2021.[135] Finally, even were the written response to be considered an instruction on the elements of the offense required to be read aloud, failure to do so would have been harmless error.[136] The situation before the Court here is not the same as was described in *Becerra*, in which the Ninth Circuit held that "[t]he virtually complete failure to instruct the jurors orally was structural error."[137]  As noted in *Becerra*, "Omission of a single element of the charged offense from the jury instructions is error, but not structural error[.]"[138]

Williams does not argue that the response was substantively inaccurate or prejudicial to him.  He argues only that it was procedurally incorrect to provide the jury with a written rather than oral response.  As he can demonstrate no substantive shortcomings with the written response, the Court concludes that Williams has not met either prong under a *Strickland* analysis (that his counsel's performance was deficient by "failing to object and appeal the submission of a supplemental instruction to the jury solely in writing, rather than requiring the Court to read it" orally,[139] and that "counsel's deficient performance renders the result of . . . the proceeding fundamentally unfair.")[140]  The objection is therefore overruled.

---

[135] Dkt. 282 at 45.
[136] FED. R. CRIM. P. 52 ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").
[137] *Becerra*, 939 F.3d at 1004.
[138] *Id.* at 1003 (citing *Neder v. United States*, 527 U.S. 1, 8–11 (1999)).
[139] Dkt. 309 at 3.
[140] *Lockhart*, 506 U.S. at 372.

As Williams presents no other new or unaddressed arguments or law to support the reiteration of his initial objections, the Court is not persuaded and overrules them accordingly.

## V. CONCLUSION

Therefore, the Court **ACCEPTS and ADOPTS WITH MODIFICATION** the Final R&R at Docket 316 and **OVERRULES** the Objections at Docket 317.

Williams's Amended Motion to Vacate, Set Aside, or Correct a Sentence Under 18 U.S.C. § 2255 at Docket 309 is **DENIED**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 10th day of August, 2026.

/s/Timothy M. Burgess\_\_\_
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE